IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

United States of America,    )
                             )
    v.                       )
                             )
Zacarias Moussaoui,          )
                             )
    Defendant,               )
                             )  Criminal No. 01-455-A
    v.                       )
                             )
All plaintiffs named in      )
21 MC 97, 21 MC 101, and     )
03 CV 9849.                  )
                             )
    Movants-Intervenors.     )
                             )

## NOTICE OF HEARING

**PLEASE TAKE NOTICE** that on May 19, 2006, at 10:00 a.m., or as soon thereafter as counsel may be heard, the Government will bring on for hearing its Motion for Reconsideration of the Court's April 7, 2006 Order Granting Intervenors Access to Discovery Produced to Defense Counsel in This Case Pursuant to Protective Orders. The Motion will be heard by the Hon. Leonie M. Brinkema, United States District Judge, at her courtroom in the Albert V. Bryan United States Courthouse, 401 Courthouse Square, Alexandria, Va.

Dated: Alexandria, Virginia
       April 21, 2006

                    Respectfully submitted,

                    Chuck Rosenberg
                    United States Attorney

By:

Larry Lee Gregg
R. Joseph Sher
Robert A. Spencer
David J. Novak
David Raskin
Assistant United States Attorneys

John Van Lonkhuyzen
Counterterrorism Section, Criminal Division
U.S. Department of Justice

Beth E. Goldman
Sarah S. Normand
Assistant United States Attorneys
Southern District of New York

Douglas N. Letter
Terrorism Litigation Counsel
U.S. Department of Justice

CERTIFICATE OF SERVICE

I certify that, I served a true and correct copy of the foregoing on counsel for the parties by depositing a true and correct copy in the United States Mail, first class postage fully prepaid, addressed as follows:

Attorneys for Defendant Moussaoui:

Gerald T Zerking. Esq.
Kenneth P. Troccoli, Esq.
Office of the Federal public Defender
1650 King Street, Suite 500
Alexandria VA 22314

Edward B. Mc Mahon, Jr. Esq.
107 East Washington Street
Middleburg VA 20117

Alan H. Yamamoto, Esq.
643 South Washington Street
Alexandria VA 22314

Attorneys for Victim-Intervenors:

Kathleen J. K. Holmes, Esq.
Williams Mullen
8270 Greensboro Suite 700
McLean VA 22102

Ronald Motley, Esq.
Jodi Westbrook, Esq.
Motley Rice LLC
28 Bridgeside Blvd
Mount Pleasant SC 29464

Liaison Counsel for Personal Injury Plaintiffs' Executive Committee
in SDNY Case No. 21 MC 97

Marc S. Moller, Esq.
Brian Alexander, Esq.
Kreindler & Kreindler
100 Park Ave
New York, N.Y. 10017

Liaison Counsel for Property Damage Plaintiffs' Executive Committee
in SDNY Case No. 21 MC 101

Robert Clifford, Esq.
Clifford Law Offices
120 North LaSalle Street, 31st Floor
Chicago IL 60602

Richard A. Williamson, Esq.
Fleming Zulack Williamson Zauderer LLP
1 Liberty Plaza
New York N.Y. 10006

Counsel for Certain Cross-Claim Plaintiffs

Aviation Defendants' Liaison Counsel in SDNY Case No. 21 MC 97 and 21 MC 101

Desmond T. Barry, Esq.
7 Times Square
New York, N.Y. 10036

Dated: April 21, 2006

_____
R. JOSEPH SHER

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

United States of America,                    )
                                             )
        v.                                   )
                                             )
Zacarias Moussaoui,                          )
                                             )
        Defendant,                           )
                                             )  Criminal No. 01-455-A
        v.                                   )
                                             )
All plaintiffs named in                      )
21 MC 97, 21 MC 101, and                     )
03 CV 9849,                                  )
                                             )
        Movants-Intervenors.                 )
                                             )

**Motion for Reconsideration**

        The United States of America, by and through the United States Attorney for the Eastern

District of Virginia, moves the Court to reconsider that portion of its Order of April 7, 2006

requiring the United States to make available to the intervenors certain material provided to

counsel for the defense under one or more protective orders. The grounds for this Motion are set

forth in the Memorandum filed herewith.

        Accordingly, the Court should reconsider its April 7, 2006 Order, and relieve the United

States of any obligation to provide access to the Intervenors to any materials made available to

Page 1 of 4

counsel for Mr. Moussaoui, without prejudice to their right to pursue discovery through the

mechanisms available to them in the litigation they are pursuing in the Southern District of New

York.

Dated: Alexandria, Virginia
       April 21, 2006

                                   Respectfully submitted,

                                   Chuck Rosenberg
                                   United States Attorney

          By:

                                   Larry Lee Gregg
                                   R. Joseph Sher
                                   Robert A. Spencer
                                   David J. Novak
                                   David Raskin
                                   Assistant United States Attorneys

                                   John Van Lonkhuyzen
                                   Counterterrorism Section, Criminal Division
                                   U.S. Department of Justice

                                   Beth E. Goldman
                                   Sarah S. Normand
                                   Assistant United States Attorneys
                                   Southern District of New York

                                   Douglas N. Letter
                                   Terrorism Litigation Counsel
                                   U.S. Department of Justice

CERTIFICATE OF SERVICE

I certify that, I served a true and correct copy of the foregoing on counsel for the parties by depositing a true and correct copy in the United States Mail, first class postage fully prepaid, addressed as follows:

Attorneys for Defendant Moussaoui:

Gerald T Zerking, Esq.
Kenneth P. Troccoli, Esq.
Office of the Federal public Defender
1650 King Street, Suite 500
Alexandria VA 22314

Edward B. Mc Mahon, Jr. Esq.
107 East Washington Street
Middleburg VA 20117

Alan H. Yamamoto, Esq.
643 South Washington Street
Alexandria VA 22314

Attorneys for Victim-Intervenors:

Kathleen J. K. Holmes, Esq.
Williams Mullen
8270 Greensboro Suite 700
McLean VA 22102

Ronald Motley, Esq.
Jodi Westbrook, Esq.
Motley Rice LLC
28 Bridgeside Blvd
Mount Pleasant SC 29464

Liaison Counsel for Personal Injury Plaintiffs' Executive Committee
in SDNY Case No. 21 MC 97

Marc S. Moller, Esq.
Brian Alexander, Esq.
Kreindler & Kreindler
100 Park Ave
New York, N.Y. 10017

Liaison Counsel for Property Damage Plaintiffs' Executive Committee
in SDNY Case No. 21 MC 101

Robert Clifford, Esq.
Clifford Law Offices
120 North LaSalle Street, 31st Floor
Chicago IL 60602

Richard A. Williamson, Esq.
Fleming Zulack Williamson Zauderer LLP
1 Liberty Plaza
New York N.Y. 10006

Counsel for Certain Cross-Claim Plaintiffs

Aviation Defendants' Liaison Counsel in SDNY Case No. 21 MC 97 and 21 MC 101

Desmond T. Barry, Esq.
7 Times Square
New York, N.Y. 10036

Dated: April 21, 2006

R. JOSEPH SHER

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA.,
ALEXANDRIA DIVISION

| | |
|---|---|
| United States of America, | ) |
| | ) |
| v. | ) |
| | ) |
| Zacarias Moussaoui, | ) |
| | ) |
| Defendant, | ) |
| | ) |
| v. | )    Criminal No. 01-455-A |
| | ) |
| All plaintiffs named in | ) |
| 21 MC 97, 21 MC 101, and | ) |
| 03 CV 9849, | ) |
| | ) |
| Movants-Intervenors. | ) |
| | ) |

**MEMORANDUM OF LAW IN SUPPORT OF THE GOVERNMENT'S MOTION
FOR RECONSIDERATION OF THE COURT'S APRIL 7, 2006 ORDER
GRANTING INTERVENORS ACCESS TO DISCOVERY PRODUCED TO
DEFENSE COUNSEL IN THIS CASE PURSUANT TO PROTECTIVE ORDERS**

The United States of America (the "Government") respectfully submits this memorandum of law in support of its motion for reconsideration of the Court's April 7, 2006 Order ("Order") to the extent it granted Movants-Intervenors ("Intervenors") access to non-classified, non-Sensitive Security Information ("SSI") documents produced to defendant's counsel in this criminal proceeding pursuant to protective orders. Although the Government has the utmost sympathy for the victims of the terrorist attacks of September 11, 2001, we nevertheless believe that this aspect of the Order is incorrect, and should be withdrawn.

## INTRODUCTION

This Court's April 7 Order is, to our knowledge, unprecedented, as it grants counsel for parties in private civil tort litigation access to a host of highly sensitive law enforcement and statutorily privileged documents that are part of an active criminal investigation.  The Government seeks reconsideration of the Order because we believe that it not only is unprecedented, but is inconsistent with law, and raises several extremely serious practical problems.  Besides prejudicing the Government in the largest criminal investigation in our nation's history, which is still ongoing, this Order will likely provoke negative consequences for numerous criminal cases in the future, as it will have an immediate and widespread impact on the way that the Government responds to criminal discovery.

As the Court is aware, the documents at issue had been provided to a small number of attorneys representing defendant Zacarias Moussaoui in this criminal case, pursuant to protective orders, in order to meet constitutional, statutory, and rule-provided disclosure obligations applicable to criminal prosecutions.  This strictly limited disclosure was done under conditions designed to get into the hands of that small group of attorneys, operating under protective orders, a massive amount of material in as short a time as possible so that the prosecution of this case would not be inordinately delayed.  The Government never contemplated that this material would be disclosed more

2

widely for use in private civil litigation.

Not surprisingly, given the very different purposes for the types of proceedings involved, the Government's criminal disclosure obligations are quite unlike its responsibilities with regard to private civil tort litigation in which the Government is not a plaintiff or a defendant. Thus, many of the documents involved here are exempt from civil discovery obligations in light of statutory and common-law privileges that govern such discovery. They are similarly exempt from Freedom of Information Act ("FOIA") disclosure obligations.

Accordingly, we urge the Court to reconsider here and withdraw this aspect of the Order, leaving instead to the courts of appeals and the district courts handling the relevant civil litigation the questions concerning the Government's obligations, if any, to provide access to its active criminal law enforcement files for use by private parties in civil tort litigation. (More broadly, we note that the arguments we make here demonstrate that even allowing intervention by private civil litigants who are essentially seeking civil discovery was mistaken.)

BACKGROUND

A.   Handling of Pretrial Unclassified Discovery in This Case

Pretrial unclassified discovery in this case resulted in over two million pages of material being turned over to defense counsel under protective orders. Among other types of information, this material included grand jury information, tax

3

return information, confidential banking Suspicious Activity
Reports, and documents provided by foreign governments.   In
addition, defense counsel received many photographs, as well as
hundreds of audio and video tapes.   The material provided to
defense counsel can be divided essentially into two parts.

First, the Government produced a vast amount of information
and documents from the Federal Bureau of Investigation's
("FBI's") criminal investigation of the 9/11 attacks, called the
PENTTBOM investigation.   This production included approximately
166,000 reports of interviews (called "302s"), some of which were
marked "Protect Identity" or "Protect Source", and nearly 1.8
million pages of documents  These materials were produced under a
protective order covering general and particularly sensitive
discovery materials.

While the 302s were redacted for witness protection and
privacy concerns, and the documentary evidence was reviewed for
relevance to the charges and potential defenses in this case, no
review was undertaken at that time for applicable privileges or
statutory protections available to the Government or the
interviewee in a civil case.   Moreover, since the FBI interviewed
many Federal Aviation Administration ("FAA"), airline, airport,
and other aviation security personnel, and  collected documents
from them, these 302s and documents could contain SSI, even
though not so marked.

Second, the Government requested various law enforcement,

4

aviation, and other federal agencies (including the Secret
Service, the Internal Revenue Service, the Bureau of Alcohol,
Tobacco and Firearms, the Customs Service, other Treasury
Department components, the State Department, the former
Immigration and Naturalization Service, the National
Transportation Safety Board, and the Department of Defense) to
search their files for potentially relevant documents (or for
some specific documents).  Responsive documents were reviewed as
quickly as practicable by members of the prosecution team and,
where relevant, or discoverable under Federal Rule of Criminal
Procedure 16, <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), or the
Jencks Act (18 U.S.C. § 3500), were produced to Moussaoui's
defense attorneys.  Again, materials were produced under a
protective order (either for general/particularly sensitive
discovery materials, or SSI), but no review was conducted for
privileges or statutory protections that might apply in civil
litigation.

Similarly, the Government produced certain documents and
information received from foreign governments, but no review was
conducted to determine whether these materials could be released
to civil litigants.  The Government also provided documents
obtained from the New York City Police Department, the New York
City Fire Department, the Port Authority Police Department, and
the New York City Medical Examiner, again without reviewing such
materials for applicable civil litigation privileges.

B.   Discovery in the SDNY Civil Cases

Intervenors are plaintiffs in the consolidated tort litigation pending before Judge Hellerstein in the Southern District of New York.   See In re September 11 Litigation, 21 MC 97 & 21 MC 101 ("September 11 Litigation").   In that case, plaintiffs assert personal injury, wrongful death, property damage, and business loss claims against various aviation and other defendants.   On behalf of the Transportation Security Administration ("TSA"), the United States intervened in the September 11 Litigation to protect SSI, disclosure of which is prohibited by statute and regulation.   See 49 U.S.C. § 114(s); 49 C.F.R. Part 1520.

Certain of the Intervenors are also plaintiffs in a separate consolidated multidistrict litigation pending in the Southern District of New York before Judge Casey, involving claims against alleged terrorists and sponsors of terrorism.   See In re Terrorist Attacks of September 11, 2001, 03 MDL 1570 ("Terrorist Litigation"), which includes Burnett v. Al Baraka Inv. & Dev. Corp., 03 Civ. 9849.   The Government is not a party to the Terrorist Litigation, although it has appeared in that case where issues involving the Government have arisen.

Intervenors have sought almost no discovery from the Government in either the September 11 Litigation or the Terrorist Litigation.   Although the Intervenors have requested access to SSI held by the aviation defendants in the September 11

Litigation, they have not sought any discovery from the
Government, whether involving SSI or any other matter, with the
exception of a single subpoena directed to the United States
Postal Service dated April 13, 2006, after this Court's April 7
Order.  Likewise, with one possible exception,[1] Intervenors have
not sought any third-party discovery from the Government in the
Terrorist Litigation.

## C.   The Motion to Intervene in This Case

Intervenors' motion was expressly limited to SSI documents
produced to defense counsel "pursuant to the Protective Order For
Sensitive Aviation Security Information entered by this Court on
June 11, 2002."  Motion for Access to Certain Parts of the Record
("Motion") at 5 ¶ 3.  Although Intervenors' memorandum of law
referred more broadly to "any documentary evidence" produced to
defense counsel, Memorandum in Support at 6, it too focused on
the TSA's determination to withhold SSI in the September 11
Litigation, see id. at 2-4.  Accordingly, the Government
reasonably interpreted the motion as seeking access to SSI
produced in discovery to defense counsel, see Government's
Memorandum of Law in Opposition ("Opp.") at 18 n.6, and directed

---

[1]    In 2004, certain plaintiffs in the Terrorist Litigation
served a subpoena seeking deposition testimony from former FBI
translator Sibel Edmonds.  The U.S. District Court for the
District of Columbia quashed that subpoena in substantial part
because it called for production of information protected by the
State Secrets Privilege.  See Burnett v. Al Baraka Inv. & Dev.
Corp., 323 F. Supp. 2d 82 (D.D.C. 2004).

its arguments to the fact that the TSA's determinations with regard to SSI are subject to the exclusive jurisdiction of the court of appeals, see id. at 16-25.

At the hearing on April 7, however, Intervenors' counsel substantially expanded their request to include all documents provided to defense counsel in the course of pretrial discovery in this case. See Tr. at 10.

This Court appropriately denied Intervenors' motion with regard to classified and SSI material, but nevertheless stated that it would grant the Intervenors access to "non-sensitive, non-classified materials the government produced as discovery in this case." Id. at 35. The Court granted this relief apparently in the belief that the Victims' Rights Act, 18 U.S.C. § 3771, and legislation creating a federal cause of action for victims of the 9/11 attacks, see Pub. L. No. 107-42, § 408, 115 Stat. 230, 236, 240-41 (2001), afford Intervenors a right of access to pretrial discovery produced in this criminal case. See Tr. at 23, 29.

Following the hearing on April 7, the Court issued a written Order ("April 7 Order"), which provides in pertinent part:

> [A]s to evidence produced to defense counsel during discovery but not admitted into evidence, the government must provide access once the criminal trial is completed. Such access shall be limited to non-classified and non-SSI evidence. Moreover, the movants-intervenors must provide the government with specific categories of evidence sought by no later than the close-of-business Friday, April 14, 2006. Finally, the cost of production, by whatever mechanism is worked out by the parties or the Court, will be born by the movants-intervenors.

8

The Order does not include any reference to a protective order or other restrictions on dissemination, and thus appears to contemplate that the materials covered by the Order may be disclosed publicly.

Despite the specific limitations in the Court's Order, on April 14, Intervenors submitted "proposed categories of evidence sought from the United States Government" that include massive amounts of classified and SSI material, as well as material that would be subject to law enforcement and other privileges.  See Victims Intervenors' Proposed Protocol and Categories of Evidence Sought from the United States Government, Exh. 1, attached hereto as Exhibit A.  In addition, since the issuance of the April 7 Order, the Government has received requests from liaison counsel for defendants in the September 11 Litigation for the same access to any material produced to plaintiffs pursuant to the Order. See April 12, 2006 Letter from Aviation Defendants' Liaison Counsel to the Government, attached hereto as Exhibit B; April 13, 2006 Letter from Ground Defendants' Liaison Counsel to the Government, attached hereto as Exhibit C.

ARGUMENT

I.    The Court's Order Granting Victims a Right of Access
      to Information Produced in Discovery in a Criminal Case
      Is Unprecedented and Without Basis in Law

      A.    The Victims' Rights Act Provides No Basis for Victims
            to Intervene for the Purpose of Obtaining Access to
            Information Produced In Criminal Discovery

There is an obvious and important distinction between

9

criminal prosecutions brought by the Government on behalf of all
of the people of the United States, and private civil tort
litigation. Although the latter serves important societal
purposes, its principal object is to obtain monetary damages for
those harmed by tortious conduct, and the defendant is subject to
a monetary damages award. By stark contrast, a criminal
defendant normally faces incarceration or, as in this case, even
death.

Accordingly, quite dissimilar discovery and disclosure
systems have developed by statute, rule, and common law for these
two distinct forms of litigation. Thus, in criminal cases, for
example, the Supreme Court has developed the Brady disclosure
doctrine, which the Court has determined is constitutionally
compelled. This doctrine is obviously relevant only to criminal
proceedings.

The courts have recognized and applied the normally clear
line between civil litigation and criminal investigations and
prosecutions. In Dellwood Farms, Inc. v. Cargill, Inc., 128 F.3d
1122, 1126-27 (7th Cir. 1997), the Seventh Circuit upheld
assertion of the law enforcement investigatory privilege by the
Government in response to a subpoena in civil litigation despite
the fact that the Government had -- without first securing a
protective order or non-disclosure agreement -- disclosed the
material at issue to attorneys for targets whom the Government
was attempting to induce to plead guilty in criminal proceedings.

10

Writing for the court, Judge Posner explained that "[t]he plaintiffs in these civil suits, who are seeking to obtain material from the government's criminal investigation, are not criminal suspects or defendants. They thus have no definite legal right to the fruits of the FBI's investigative endeavors conducted in confidence . . . ." Id. at 1125. The court went on to note that FOIA "confers on private persons legal rights to certain information in the possession of the government, but contains an exception for information that is collected and is being used for purposes of law enforcement . . . ." Id.

The Fourth Circuit recently also noted how the difference between civil and criminal proceedings can affect disclosure of government information. In Sterling v. Tenet, 416 F.3d 338 (4th Cir. 2005), the Court upheld dismissal of a civil discrimination action in light of the Government's assertion of the State Secrets Privilege. In so doing, the court explained the importance of this privilege in civil cases in order to defeat "graymail" under which the Government could be induced to settle a case out of fear of disclosure of sensitive information. The court contrasted this with the situation in a criminal case, "where the government can drop the charges if it fears that litigation presents unacceptable security risks . . . ." Id. at 344.

The relevant point here is that the Fourth Circuit recognized that the two systems -- criminal prosecutions versus

11

civil suits -- operate in very different worlds and often involve
dissimilar calculations on the Government's part with regard to
protection of sensitive information.

This Court's statements at the April 7 hearing appear to
indicate that it nevertheless believed that Congress had, in the
Victims' Rights Act, eliminated the wall between criminal
prosecutions and private civil tort actions, and thus intended to
provide access by private civil tort attorneys to discovery
material produced to criminal defense attorneys pursuant to a
protective order, but never used at trial.  There is, however, no
evidence that Congress enacted such a revolutionary new
principle.

In that statute, 18 U.S.C. § 3771(a), Congress listed
specific rights for victims of crime.  There is a general right
for a victim to be "treated with fairness and with respect for
the victim's dignity and privacy."  Id. at § 3771(a)(8).  Nothing
in our position here is in any way inconsistent with that
obviously laudable requirement.

More relevantly, the statute grants victims rights to
notice, access, and an opportunity to be heard in connection with
criminal proceedings.  It is essential to note, though, that
those rights are all with regard to "public proceeding[s]."  See
id. at § 3771(a)(2), (3) & (4).

Although the statute is still quite new, at least one court
has already ruled that this language means what it says, and does

not afford victims rights of access to closed criminal
proceedings.  See United States v. LM, __ F. Supp. 2d __, No. 06
CR 18 LRR, 2006 WL 855806, at *3 (N.D. Ia. Mar. 31, 2006)
(holding that the CVRA "only applies to 'public' court
proceedings," and thus did not apply to non-public aspects of
juvenile delinquency proceeding).  And, even as the Ninth Circuit
remanded a matter so that victims could speak at a resentencing
proceeding, that court noted that there are instances in which
portions of a criminal case record are sealed for compelling
reasons.  See Kenna v. U.S. District Court, 435 F.3d 1011, 1015
n.3 (9th Cir. 2006).

Nothing in the text of the statute, or in the case law
applying it, even hints that Congress meant to radically alter
the relationship between civil and criminal cases by creating a
right of access by private civil tort attorneys to sensitive
Government records that are part of an active criminal
investigation and were produced to a criminal defendant's
attorneys under a protective order to satisfy constitutional,
statutory, and rule-provided criminal discovery obligations.

It is not surprising that Congress did not create such a new
right, which would have been strenuously opposed by the
Government during the legislative process.  A right of access
such as that provided in the Order would have several serious
negative consequences, which Congress could not have contemplated
in passing the Act.

13

First, it would create immense new burdens on the Government. As a prosecution is proceeding, Government officials would have to analyze closely any materials to be given under a protective order to defense counsel in order to segregate them to make clear which parts are privileged from possible later civil discovery. Indeed, given the breadth of the law enforcement investigative privilege and FOIA Exemption 7, these markings would likely be very extensive. Such processing, which would require consultations with interested agencies, would necessarily considerably slow down the process of criminal discovery. A requirement that the Government provide victims with copies of all documents disclosed in criminal discovery, moreover, would likely have the perverse effect of limiting the Government's production in future criminal cases.

Second, the access given here will obviously in the future encourage civil litigants to bypass the civil discovery process, hoping instead to obtain more material through the criminal court. This tactic would require far more work for the criminal case judge, who would have to become embroiled in civil discovery privilege issues, thereby effectively replacing the judge or magistrate judge in the civil case who would otherwise handle these issues.

Third, it is not at all clear that running the civil discovery process through a criminal case could work properly because it would often have to deal with issues concerning the

14

rights of parties in civil cases to object to third-party discovery, and the rights of such third parties to object to discovery.

In sum, nothing in the Victims' Rights Act itself grants victims any right of access to non-public criminal discovery, and inferring such a right raises serious public policy problems.

B.   Congress Has Not Granted 9/11 Victims Any Special
     Right of Access to Information

The 9/11 victims have no special rights to discovery here (or anywhere) by virtue of any Congressional enactment.   In the immediate aftermath of September 11, Congress enacted the Air Transportation Safety and System Stabilization Act ("ATSSSA"), which, among other things, established the September 11th Victim Compensation Fund of 2001, and created a federal cause of action for damages arising from the events of September 11.   ATSSSA, Pub. L. No. 107-42, §§ 401, 408, 115 Stat. 230, 236, 240-41 (2001), as amended.

Specifically, section 408(b) of the ATSSSA provides that "[t]here shall exist a Federal cause of action for damages arising out of the hijacking and subsequent crashes" of the four flights hijacked on September 11, 2001.   This cause of action is the "exclusive remedy for damages arising out of the hijacking and subsequent crashes of such flights."   ATSSSA § 408(b)(1). Congress limited certain defendants' liability to the amount of their insurance coverage.   Id. § 408(a).   Congress further

15

provided that the United States District Court for the Southern
District of New York would have original and exclusive
jurisdiction "over all actions brought for any claim (including
any claim for loss of property, personal injury, or death)
resulting from or relating to the terrorist-related aircraft
crashes of September 11, 2001." Id. § 408(b)(3). Congress
included a choice of law provision (§ 408(b)(2)) and an exclusion
for actions to recover against participants in the conspiracy and
for collateral source obligations (§ 408(c)).

Significantly, Congress did not provide any special rules
for discovery in cases brought pursuant to section 408(b) of
ATSSSA, nor any unique entitlement for 9/11 victims to privileged
information or other sensitive material.[2] If anything, Congress
placed limits on venue and monetary recovery available at common
law; therefore, it cannot be said that Section 408 expanded the
rights of plaintiff victims. The Court's conclusion that
Intervenors are somehow granted special status as civil litigants
under post-9/11 litigation is therefore incorrect.

---

[2]    In fact, less than two months after the ATSSSA was
enacted, Congress passed the Aviation and Transportation Security
Act ("ATSA"), by which it created the TSA and directed that
agency, as it had previously directed the FAA, to "prescribe
regulations prohibiting the disclosure of information obtained or
developed in carrying out [civil aviation] security . . . if [the
TSA] decides that disclosing the information would . . . be
detrimental to the security of transportation." 49 U.S.C.
§ 114(s) (formerly codified at 49 U.S.C. § 40119(b)(1)(C)).
Nothing in the ATSA excludes 9/11 victims from the scope of this
statutory directive.

16

II.  Even If the Court Has Authority to Grant Access to Portions
     of the Criminal Discovery Produced in This Case, the Order
     <u>Is Overbroad, Unworkable, and Enormously Burdensome</u>

     A.   The Court's Order Affords Access to Documents Neither
          Sought in Intervenors' Motion Nor Requested in
          <u>Discovery in the SDNY Cases</u>

On its face, Intervenors' motion sought access only to
documents produced to defense counsel pursuant to the protective
order governing SSI that was entered by the Court on June 11,
2002.  <u>See</u> Motion at 5 ¶ 3.  The Court properly denied
Intervenors access to SSI, but nevertheless granted them access
to a mountain of documents, numbering over two million pages,
that were not even sought in their motion.  Even more
importantly, Intervenors have not made any effort to obtain this
information in the normal course of civil discovery in the
September 11 or Terrorist Litigations.  <u>See, e.g.</u>, 28 C.F.R.
§§ 16.21 <u>et seq.</u>

Contrary to the statements by Intervenors' counsel at the
April 7 hearing, <u>see</u> Tr. at 8, 25-26, Judge Hellerstein has never
suggested that such discovery should be sought in the first
instance from this Court.  Judge Hellerstein did <u>not</u> direct
plaintiffs to come to this Court to obtain pretrial discovery
provided to defense counsel in this case; rather, he denied
plaintiffs' request for discovery regarding "alleged
improprieties" in this case involving TSA attorney Carla Martin,
and indicated that such issues were beyond his jurisdiction.  <u>See</u>
Order Denying Discovery Requests dated March 17, 2006, attached

17

hereto at Tab D.  The only matters that Judge Hellerstein

indicated should be directed to this Court concerned "requests by

the media or members of the public for access to the letters

referenced in [the March 17] Order."  Id.  Plaintiffs' attempt to

transform Judge Hellerstein's March 17, 2006 Order into a

direction to seek wide-ranging discovery from a criminal case is

entirely without basis.

B.    The Documents Covered by the Court's Order Include
      Sensitive Law Enforcement and Otherwise Privileged
      Information That Must Be Thoroughly Reviewed by the
      Appropriate Agencies Prior to Any Production

The Court's comments at the April 7 hearing suggest that it

is under the impression that the Government can simply produce

all "non-sensitive, non-classified" information to Intervenors'

counsel without further review.  Tr. at 35; see also id. at 24

("in terms of the general non-classified discovery, I, frankly,

cannot see what the problem other than logistics would be for the

government to make that information available to the plaintiffs'

counsel.  There's not a security issue there, and the

government's already amassed that evidence, and it should not be

that difficult").  That is not the case.

As the Court recognized at the hearing, this is "a case

laden with all sorts of issues about limited access to sensitive

information, not just from the aviation spectrum of the

government but from many other spectrums of the government as

well."  Tr. at 4.  For that reason, all of the documents produced

18

to defense counsel in this case were provided pursuant to
protective orders prohibiting further disclosure of the
information.  With those protective orders in place, no further
review was undertaken by the Government (other than a limited
review of FBI 302s for witness protection and privacy concerns)
to determine whether the information would be privileged if
requested in civil discovery or exempt from disclosure under
FOIA.

     Thus, although there may be non-privileged, discoverable
information among the millions of pages of documents produced to
defense counsel in this case, those documents include sensitive
and otherwise privileged information and would have to be
carefully reviewed by the respective agencies prior to any
production to Intervenors.

     To begin with, much of the unclassified/non-SSI criminal
discovery material potentially would be covered by the law
enforcement privilege, and the related FOIA exemption that
protects "records compiled for law enforcement purposes" when
disclosure "could reasonably be expected to interfere with
enforcement proceedings."  5 U.S.C. § 552(b)(7)(A).   In
responding to FOIA requests from members of the public seeking
documents relating to this case, the FBI has in fact withheld
such documents under Exemption 7(A) of FOIA.  See also Center for
Nat'l Sec. Studies v. DOJ, 331 F.3d 918 (D.C. Cir. 2003)
(upholding government's withholding, pursuant to FOIA Exemption

7(A), of information regarding persons detained in the wake of 9/11 attacks); Exh. A, Exh. 1 at 8 (seeking all documents concerning any person held as material witness in connection with 9/11 attacks).[3]

Various statutory privileges and protections would also apply to certain documents covered by the Court's April 7 Order. For example, the pretrial discovery in this case included Suspicious Activity Reports ("SARs"), which financial institutions are required by law to submit to the Treasury Department, see 31 U.S.C. § 5318(g)(1). SARs are protected from disclosure by statute, see id. § 5318(g)(2)(A)(ii), and the Treasury Department has promulgated regulations implementing that statute, see 31 C.F.R. 103.18(e).

Any SARs produced to defense counsel in this case pursuant to a protective order accordingly would not be available to civil litigants in discovery. See Weil v. Long Island Savings Bank, 195 F. Supp. 2d 383, 388 (E.D.N.Y. 2001) (31 U.S.C. § 5318(g)(2) is sufficiently specific to support regulations prohibiting disclosure of SARs in response to valid demand under FRCP 34);

---

[3]   Although Exemption 7(A) no longer applies once an investigation has closed and all criminal and related proceedings have concluded, other FOIA exemptions applicable to law enforcement records would nevertheless continue to apply.  See 5 U.S.C. § 552(b)(7)(C) (unwarranted invasion of personal privacy), 7(D) (confidential source information); 2 & 7(E) (law enforcement techniques and procedures), 7(F) (endangerment of life or physical safety of any person).  In any event, as mentioned previously, the materials here are part of a large, still-ongoing criminal investigation.

Gregory v. Bank One, Indiana, N.A., 200 F. Supp. 2d 1000 (S.D.
Ind. 2002) (court not authorized to order or permit bank to
disclose copy of SAR because SARs constitute privileged
information under 31 U.S.C. § 5318(g)(2) and regulations
promulgated thereunder); Lee v. Bankers Trust Co., 166 F.3d 540,
544 (2d Cir. 1999) (noting that, even in a suit for damages based
on disclosures made in SAR, financial institution prohibited from
releasing SAR or even acknowledging that SAR has been filed).
Such documents would be exempt from disclosure under FOIA
Exemption 3 as well.  See 5 U.S.C. § 552(b)(3) (protecting
information "specifically exempted from disclosure by statute").

     In addition, some documents provided by the FBI and produced
in discovery in this case contain grand jury material that is
protected from disclosure under Federal Rule of Criminal
Procedure 6(e) and FOIA Exemption 3, 5 U.S.C. § 552(b)(3).   The
documents subject to the April 7 Order likely would also contain
substantial information protected by the Privacy Act, 5 U.S.C.
§ 552a.  Federal tax returns and return information contained
within the pretrial discovery materials are similarly
confidential and protected from disclosure by statute, see 26
U.S.C. § 6103, and FOIA Exemption 3.

     Further, although only the TSA and the Department of
Transportation and its component agencies have authority to
designate information as SSI, see 49 U.S.C. §§ 114(s), 40119, as
noted, some of the documents provided to the prosecution team by

the FBI may contain SSI even if not marked as such.  FBI 302s

concerning interviews of airport or airline security officials,

for instance, could certainly include SSI.  Yet, because of the

unique circumstances of this case, and the essentially "open

file" manner in which discovery was conducted, Tr. at 31-32, such

documents were not submitted to the TSA for SSI review before

being given to defense counsel under the general discovery

protective order, and thus the TSA never had an opportunity to

consider whether disclosure of this information would be

detrimental to transportation security.

        Moreover, while we certainly appreciate the Court's concern

with retroactive marking of classified or SSI material, see Tr.

at 27, as the Court recognized, id. at 31, the breadth of

discovery in this case was overwhelming.  The failure to mark any

particular document as classified or SSI -- or to transmit

documents originating from other agencies to the Intelligence

Community or TSA for review and proper marking, with the

concomitant delays in the discovery process -- cannot be deemed a

waiver of classification.  Having produced all discovery to

Moussaoui's defense counsel under protective orders, the

Government could not reasonably have anticipated that the Court

would take the unprecedented step of ordering disclosure of non-

public criminal pretrial discovery to litigants in a civil case.

Had the Government envisioned that possibility, it would have

employed very different procedures, and discovery in this case no

doubt would have been far more burdensome and time-consuming.[4]

    C.    The Government's Compliance With <u>Brady</u> and Other
          Discovery Obligations Does Not Render Privileged
          <u>Documents Accessible to Intervenors</u>

As the Court correctly observed at the April 7 hearing, "the
fact that the government made a limited disclosure to defense
counsel in no respect waived the government's rights to maintain
that information under seal or other types of nondisclosure
arrangements." Tr. at 8. That is because the Government makes
such disclosures in criminal cases, typically pursuant to
protective orders, in order to satisfy its constitutional
obligations under <u>Brady</u> and other disclosure requirements.

<u>Brady</u> applies to all documents in the Government's
possession, regardless of whether those documents reveal
information about national security, pending law enforcement
investigations, or other privileged matters. In <u>Pennsylvania v.
Ritchie</u>, 480 U.S. 39 (1987), for example, the Supreme Court held

_____

[4]    As the Court alluded to at the April 7 hearing, Tr. at
33-34, because of the exceptional public interest in this unique
case, the Government determined, in accordance with Section
3.1(b) of Executive Order 13292, that, if certain classified
information was necessary for the case to proceed to trial, such
classified information could be declassified when admitted into
evidence at trial. To the extent such classified information was
not admitted into evidence at trial, the information remains
currently and properly classified in accordance with Executive
Order 13292. <u>Cf.</u> 18 U.S.C. App. 3, § 8(a) (writings, recordings,
and photographs containing classified information may be admitted
into evidence without change in their classification status).
The Government accordingly considers this information to be
classified and not subject to the April 7 Order.

that a criminal defendant was entitled to <u>Brady</u> material contained within confidential records of a state social services agency relating to its interviews with an abused child, even though a state statute generally barred production of such records.  <u>Id.</u> at 57-58.

But compliance with <u>Brady</u> has never been held to render privileged or otherwise protected information accessible to the public or even to the victims of crime.  Thus, the confidential records in <u>Ritchie</u> would not thereafter have been available to the press or private civil litigants simply because the state was required to turn them over to the defendant to meet its <u>Brady</u> obligation.  Similarly here, the Government's production of information to defense counsel, pursuant to protective orders, to satisfy its <u>Brady</u> or other discovery obligations does not vitiate any privileges that apply to such information.[5]

    D.    Intervenors' April 14 Submission, and Correspondence
          Received from Defendants' Counsel in the SDNY Cases,
          <u>Demonstrate the Enormous Breadth of Disclosure Sought</u>

Intervenors' April 14 submission demonstrates that they are seeking materials well beyond the boundaries of the Court's April 7 Order, and illustrates the extraordinary volume of documents they seek.  <u>See</u> Exh. A.  Among many other categories of

---

[5]    Intervenors' offer to abide by the terms of the protective orders entered in this case, <u>see</u> Tr. at 8, 17, is meaningless.  Like any civil litigants, Intervenors may not gain access to privileged information simply by agreeing not to disclose it further.

documents, Intervenors seek:

- "all documents from the U.S. government's PENTBOMB [sic] investigation,"

- "all documents collected by the 9/11 Commission and Joint Congressional Inquiry [i]nto the September 11th Attacks,"

- "all materials which relate to the financing of al Qaeda,"

- "[a]ll documents concerning the terrorist training camps in Afghanistan,"

- "[e]lectronic and searchable copies of all FBI 302's,"

- "[a]ll documents concerning" several named individuals, including Jamal Al Fadl, Ramzi Binalshibh, Khalid Sheik Mohammed, and Ramzi Yousef, as well as "[a]ny person held as a material witness in connection with the September 11th attacks,"

- "[a]ll documents concerning aviation security," and

- "[a]ny and all materials produced under agreement with any foreign government."

Id. at Exh. 1 ¶¶ 3, 6-7, 11-12, 17, 20, 22.   Intervenors here seek greater access to documents than the 9/11 Commission had. Even excluding classified documents and SSI, reviewing approximately two million pages of documents to isolate and segregate privileged information imposes an extraordinary burden on the Government.

Notably, the broad categories of information sought by Intervenors plainly would include classified information, in contravention of the April 7 Order, as well as information subject to the law enforcement and other privileges.  See also Exh. A at Part II (seeking evidence presented to the jury pursuant to the silent witness rule), Part III (seeking redacted

documents and substitutes), Item 1 (draft exhibit lists,

discovery lists), and Item 9 (Senior Executive Intelligence

Briefs).

Contrary to the specific limitations of the Order, moreover,

in seeking all documents relating to "aviation security,"

Intervenors obviously seek vast amounts of SSI, including:

- documents concerning CAPPS, the Checkpoint Operations Guide,
  the Air Carrier Standard Security Plan ("ACSSP"), and
  information concerning pre-boarding screening procedures,
  cockpit doors, weapons detection, and calibration of
  magnetometers,

- "[a]ll audits, investigations, studies and reports
  concerning aviation security,"

- "[c]opies of all Security Directives, Information Circulars
  and Civil Aviation Security Intelligence published
  assessments,"

- "[a]ll documents concerning security level alerts and how
  airlines were informed of such alerts," and[6]

- "[n]otes of all meetings or interviews conducted with any
  current or former employee of any of the airlines, security
  screening companies and airport operators or their lawyers."

Id. at Exh. 1 ¶¶ 9-11, 19.  All of these documents on their face

implicate SSI; indeed, many of them are specifically designated

SSI by regulation.  See 49 C.F.R. § 1520.5(b) (SSI includes,

among other things, ACSSPs and other standard security programs,

Security Directives, Information Circulars, vulnerability

---

[6]      Intervenors also seek "[a]ll documents concerning
warnings or threat assessments to hijack or attack civil
aviation," citing the Court's Order dated January 24, 2006.  That
Order was in this respect rescinded at the subsequent CIPA
hearing on January 30, 2006, and covered classified information
in any event.

assessments, specific details of security measures, threat information, and security screening information).

This information has been requested in the September 11 Litigation and is covered by the TSA's final orders that are currently the subject of pending petitions for review in the D.C. and Second Circuits.  See Opp. at 7-11.  Intervenors' submission both ignores the clear terms of this Court's Order that the Government need not produce SSI, and demonstrates that their application to this Court is, principally, an attempt to end-run the court of appeals' exclusive jurisdiction to determine whether TSA has validly declined to authorize disclosure of SSI, see id. at 16-18.

In addition to the extraordinary volume and sensitive nature of documents sought, the number of attorneys who seek access to this information is highly problematic.  There are dozens of attorneys representing plaintiffs in each of SDNY cases.  This group substantially exceeds the quite small number of defense counsel who were given access to pretrial discovery materials in this case, or the number of attorneys who would normally be expected to have access to sealed discovery materials in a criminal case.

And since the Court's Order was issued, the Government has, not unexpectedly, received multiple inquiries from counsel representing defendants in the September 11 Litigation, seeking equivalent access to whatever material is produced pursuant to

27

the Order.  See Exhs. B-C.  Counsel representing defendants in
the Terrorist Litigation undoubtedly will follow with similar
requests.

Thus, the disclosure of information potentially authorized
by the Order goes far beyond a "select group" of counsel
representing 9/11 victims, Tr. at 18.

E.    Resolution of Disputes Arising Under the Order Will Be
      Burdensome and Inefficient for the Court

Finally, permitting Intervenors to circumvent the normal
discovery process and instead seek discovery through this
criminal case also presents serious logistical problems for the
Court.  Given the volume of documents involved, the prevalence of
privileged information, the respective interests of the various
federal agencies, and the large number of counsel pursuing
different tort theories in two separate and independent civil
cases, there are bound to be disputes about the scope of
disclosure required by the Order, the adequacy of the
Government's production, and the applicability of privileges to
particular documents or categories of documents.  Litigation of
such disputes would impose an immense burden on this Court.

Indeed, is not even clear that the Court would have
jurisdiction to resolve disputes arising under the Order, or to
enforce compliance with any protective orders that might be
entered.  Before producing documents pursuant to the Order,
numerous federal agencies will have to review over two million

28

pages of documents to segregate privileged from non-privileged materials.  This process no doubt will continue well beyond the period during which the Court will retain jurisdiction over this case.  See United States v. Fraley, 988 F.2d 4, 6-7 (4th Cir. 1993) (district court lacked authority to alter sentence after expiration of 7-day period set forth in Federal Rule of Criminal Procedure 35); accord United States v. Clark, 292 F.3d 1310, 1315-19 (11th Cir. 2002).

Even assuming that the Court retains authority over matters relating to the Order following the conclusion of the criminal case, it simply is not efficient for this Court to resolve disputes involving the scope of discovery in civil cases pending in another jurisdiction.  The district judges who are presiding over those cases are in the best position by far to manage civil discovery in them.

## CONCLUSION

For the foregoing reasons, the Court should grant reconsideration and vacate that portion of its April 7 Order that grants Intervenors access to non-classified, non-SSI discovery provided to defense counsel in this case.

Dated:     Alexandria, Virginia
           April 21, 2006

                              Respectfully,

                              Chuck Rosenberg
                              United States Attorney


           By:    _____
                              Robert A. Spencer
                              David J. Novak
                              David Raskin
                              Larry Lee Gregg
                              R. Joseph Sher
                              Assistant United States Attorneys

                              John W. Van Lonkhuyzen
                              Counterterrorism Section
                              U.S. Department of Justice

                              Beth E. Goldman
                              Sarah S. Normand
                              Assistant United States Attorneys
                              Southern District of New York

                              Douglas N. Letter
                              Terrorism Litigation Counsel
                              U.S. Department of Justice


30

Exhibit A

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
**Alexandria Division**

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | )      **Criminal No. 01-455-A** |
| | ) |
| ZACARIAS MOUSSAOUI, | ) |
| | ) |
| Defendant, | ) |
| | ) |
| ALL PLAINTIFFS NAMED IN | ) |
| 21 MC 97, 21 MC 101, and 03 CV 9849 | ) |
| | ) |
| Victim Intervenors. | ) |

## VICTIM INTERVENORS' PROPOSED PROTOCOL AND CATEGORIES OF EVIDENCE SOUGHT FROM THE UNITED STATES GOVERNMENT

We write on behalf of thousands of victims of the September 11th terrorist attacks

whose motions to intervene were granted in the above referenced action. As directed by

the Court in its Order of April 7, 2006, the Victim Intervenors submit this suggested

protocol for the production of certain documents and have attached as Exhibit 1 a list of

the specific categories of materials sought. As we stated during the hearing, Victim

Intervenors have no intention of interfering with the government's prosecution of

Zacarias Moussaoui or the Court's orderly administration of this historic and important

litigation. In the event that our suggested protocol imposes some unforeseen burden,

Victim Intervenors remain available to discuss the most expeditious and convenient

means through which these materials may be produced.

I.    Identical Access to All Evidence Ordered to be Released to the Media-Intervenors

Victim Intervenors are aware of the websites which contain copies of the

transcripts and exhibits which have been fully published to the jury. Therefore, we have

sufficient access to these materials at present. In speaking with the Court's Public

Information Officer, Edward Adams, however, we have learned that copies of audiotapes

and videotapes that are produced into evidence and played to the jury are not available on

any website and are given, on a rotating basis, to certain members of the media which

distribute the tapes in a pool to various media outlets. The Victim Intervenors do not

presently have access to these materials and request that the government provide, as the

Court has ordered, the same access to the Victim Intervenors that it has provided to the

media. We suggest that the government send via Federal Express copies of all video and

audio that it introduces into evidence and plays for the jury within 7 days after the

government rests its case in chief, to the following address:

> Michael Elsner, Esq.
> Motley Rice LLC
> 28 Bridgeside Blvd.
> Mount Pleasant, SC 29464
> (843) 216-9000

Costs associated with this production will be borne by the Victim Intervenors. A

Federal Express billing number will be provided privately for shipment purposes.

II.    All Evidence Presented to the Jury

At the conclusion of the trial, consistent with the Court's Order, Victim

Intervenors request that the government either mail or make available for production in

Washington, DC or in Alexandria, VA a complete set of all evidence presented to the

jury. Such documents shall include all documents submitted into evidence and partially

2

shown to the jury and those documents presented to the jury pursuant to the silent witness rule. For ease of reference, Victim Intervenors request that the government produce copies of any exhibit lists created and filed in the case by the government, defendant and/or the Court.

In the event that the production of documents to Moussaoui's lawyers was done electronically or if an electronic version of the production exists, Victim Intervenors prefer that the documents be produced electronically on CD ROM's or DVD's. We would prefer documents formatted in Adobe's Portable Document Format (PDF), though Tagged Image Files Format (TIFF) is also acceptable. For indices and other data sets that are electronically available, please provide this information as delimited ASCII text files with a data dictionary.[1] Victim Intervenors request that the evidence presented to the jury be produced within 10 days after the completion of closing arguments.

### III.    Evidence Produced to Defense Counsel During Discovery but not Admitted into Evidence

It is difficult in the abstract and without the benefit of having the opportunity to review the full scope of the government's production to provide as detailed a response as we would like with respect to the categories of materials that Victim Intervenors seek access. Nevertheless, our best effort to create a comprehensive list of the respective categories is attached as Exhibit 1. Victim Intervenors have provided listings of some of the specific documents sought below each general category. These lists are not exhaustive and were prepared simply to direct the government to certain specific documents. In the event that the government has an index of those documents turned

---

[1]     If producing the documents in these formats will present too great a burden for the government, Intervenors will endeavor to work with the Government to come up with a format acceptable to both parties.

3

over to defense counsel in production, it may be possible to narrow the categories of materials and provide even greater specificity.

Victim Intervenors request that the government either mail or make available for production in Washington, DC or in Alexandria, VA a complete set of all documents that fall within the categories listed in Exhibit 1. In the event that the production of documents to Moussaoui or his lawyers was done electronically or if an electronic version of the production exists, Victim Intervenors prefer that the documents be produced electronically on CD ROM's or DVD's. We would prefer documents formatted in Adobe's Portable Document Format (PDF), though Tagged Image File Format (TIFF) is also acceptable. For indices and other data sets that are electronically available, please provide this information as delimited ASCII text files with a data dictionary. In the event that the government provided translations of certain documents to defense counsel, the Victim Intervenors request the same courtesy. Victim Intervenors propose that the government begin producing these materials no later than 14 days after the jury returns a verdict, and that the government complete its production, absent extenuating circumstances, no later than 45 days document production commences.

If the government prefers to simply produce to the Victim Intervenors copies of all documents turned over to Moussaoui's defense counsel rather than determine which documents produced are responsive to specific categories of documents requested, Victim Intervenors would prefer that protocol.

As the Court noted during the hearing on April 7, 2006, the prosecution and defense counsel reached numerous agreements on redactions and substitutions or

4

summaries of certain documents to protect SSI and classified information from public view. Victim Intervenors request the production of these redacted documents, substitutions and summaries at the conclusion of the case as those documents are not classified and are not SSI.

In addition, the government made certain decisions to waive SSI with respect to certain exhibits and evidence and/or determined that certain documents were no longer classified or properly designated SSI simply due to the passage of time. For example, even though the TSA contended that the Dulles screening video depicting the 9/11 hijackers on Flight 77 was SSI in a letter to Motley Rice LLC, the video was played and used in open court in the Moussaoui case. *See* Testimony of Robert Cammaroto, pp. 1854-62 (March 22, 2006) and copies of the video and still shots of the video were published to the jury as Exhibits NT00211, NT00211.1-NT00211.7, respectively.

At some point before Mr. Cammaroto's testimony, the government informed defense counsel that it was using this video, previously designated as SSI. Victim Intervenors request the production of all documents where the government decided that a document or item was no longer classified or SSI or decided to waive its SSI determinations. Victim Intervenors request the production of these materials even in those instances in which the document or item was not presented into evidence. For those documents, the government must have determined that the release would not continue to "expose vulnerabilities" in aviation security which Mr. Cammaroto said was the "acid test" for SSI. *See,* Testimony of Robert Cammaroto, p. 28, lines 1-6 (March 21, 2006).

The spirit of the Court's Order and the sentiments Judge Brinkema displayed during our hearing on April 7, 2006 make clear that the following collections of materials should be produced to the Victim Intervenors at the conclusion of the case.   Victim Intervenors remain available at the government's convenience to discuss these requests and suggested protocol.

Dated:  April 14th, 2006

Respectfully submitted,

By:

Kathleen J.L. Holmes, Esq. (VA Bar #35219)
**WILLIAMS MULLEN**
8270 Greensboro, Suite 700
McLean, VA  22102

By:

Ronald L. Motley, Esq.
Jodi Westbrook Flowers, Esq.
Donald A. Migliori, Esq.
Michael E. Elsner, Esq. (VA Bar #41424)
Robert T. Haefele, Esq.
Justin B. Kaplan, Esq.
John M. Eubanks, Esq.
**MOTLEY RICE LLC**
28 Bridgeside Blvd.
Mount Pleasant, SC  29464
(843) 216-9000

LIAISON COUNSEL FOR PERSONAL
INJURY PLAINTIFFS' EXECUTIVE
COMMITTEE IN 21 MC 97

Marc S. Moller, Esq.
Brian Alexander, Esq.
**KREINDLER AND KREINDLER LLP**
100 Park Avenue
New York, NY  10017

LIAISON COUNSEL FOR PROPERTY
DAMAGE PLAINTIFFS' EXECUTIVE
COMMITTEE IN 21 MC 101

Robert A. Clifford, Esq.
**CLIFFORD LAW OFFICES**
120 North LaSalle Street, 31st Floor
Chicago, IL 60602

Richard A. Williamson, Esq.
**FLEMING ZULACK WILLIAMSON
ZAUDERER LLP**
One Liberty Plaza
New York, NY 10006

Counsel for Cross-Claim Plaintiffs
World Trade Center Properties LLC
1 World Trade Center LLC
2 World Trade Center LLC
4 World Trade Center LLC
5 World Trade Center LLC
7 World Trade Company, L.P.

ATTORNEYS FOR VICTIM INTERVERNORS

7

## CERTIFICATE OF SERVICE

I hereby certify that, on this 14th day of April 2006, I caused true and correct copies of the foregoing Proposed Protocol and Categories of Evidence Sought from the United States Government, upon counsel for the parties as follows:

**By Federal Express**
Gerald T. Zerking, Esq.
Kenneth P. Troccoli, Esq.
Office of the Federal Public Defender
1650 King Street, Suite 500
Alexandria, Virginia 22314

**By Federal Express**
Edward B. MacMahon, Jr., Esq.
107 East Washington Street
Middleburg, Virginia 20117

**By Federal Express**
Robert A. Spencer, Esq.
David Novak, Esq.
David Raskin, Esq.
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314-5794

**By Federal Express**
Alan H. Yamamoto, Esq.
643 South Washington Street
Alexandria, Virginia 22314

Kathleen J. L. Holmes

1273276v1

**EXHIBIT 1**

## VICTIM INTERVENORS' PROPOSED CATEGORIES OF EVIDENCE SOUGHT FROM THE UNITED STATES GOVERNMENT

Pursuant to the Court's Order of April 7, 2006, the Victim Intervenors hereby submit a list of categories of documents sought from the United States government. The following categories hereby include:

1.      Copies of all witness lists, exhibit lists, discovery productions lists, lists of codes for each produced exhibit prefix, databases, lists of exhibits or materials to be potentially used by the prosecution or the defense in the examination of witnesses and copies of all correspondence explaining the origin of certain collections of documents.

2.      Please produce copies of all PowerPoint presentations, graphs, videos, audiotapes, exhibits, reports or other items which were designated for use by the government or the defense with any witness. For example, see exhibits GX OG-10 and GX OG-117.

3.      Copies of all materials which relate to the financing of Al Qaeda.

4.      Copies of all documents related to charities or non-governmental organizations "NGO's" in Afghanistan and throughout the world that have allegedly provided support to Al Qaeda.

5.      All documents concerning threats, warnings or fatwa's issued by Osama bin Laden.

6.      All documents concerning the terrorist training camps in Afghanistan. Such documents shall include, but shall not be limited to:

> a. Documents containing information reflecting the organization of the training camps as alleged in the Moussaoui indictment;
> b. Documents containing information about the Khalden Camp;

    c.  Documents containing information concerning training camps attended by the 19 hijackers and Ramzi Binalshibh, Zacarias Moussaoui and Zakariya Essabar;

    d.  Video, audio or written wills or last testaments of training camp attendees;

    e.  All camp training materials and computer hard drives;

    f.  All financial information concerning funding for and operation of the training camps;

    g.  All documents concerning the travel patterns and payments for travel of camp attendees.

7.    All documents from the U.S. government's PENTBOMB investigation produced to the defendant or his counsel.

8.    Copies of all correspondence, communications and/or exchanges between the FAA, TSA, CIA, NSA, DOD, DOT and/or any other government agency and the Air Transport Association, International Air Transport Association, Airlines, Airport Operators or Aviation Security Screening Companies. Responses to this request shall include but shall not be limited to:

    a.  Spring of 2001, unclassified CD ROM presentation to the air carriers and airports including Logan, Newark and Dulles, concerning aviation security threats;[1]

    b.  Aviation Security Audits;

    c.  Inspector General Audits of aviation security;

    d.  Documents concerning the 9/11 Commission including all FAA written or oral testimony to the 9/11 Commission regarding Aviation Security and threats to civil aviation foreign and domestic;

    e.  All unclassified briefings prepared by Patrick McDonnell to the airlines concerning possible or potential threats to security;[2]

    f.  Copies of three intelligence assessments authored by Matthew Kormann in the late 1990's that were declassified for use in the Moussaoui case;[3]

    g.  Robert White's security briefing conducted at the headquarters of the Air Transportation Assoc. headquarters in 1998;[4]

---

[1]    9/11 Commission Staff Monograph on Aviation Security.

[2]    Testimony of Mr. McDonnell, p. 102 ln. 5-11, March 14, 2006. These briefings should be produced even if the government has attempted retroactively to classify them under some mosaic theory. The Court has rejected retroactive classifications of materials.

[3]    Testimony of Mr. Kormann, p. 115 ln 5-9, March 14, 2006.

[4]    Testimony of Robert White, p. 156 ln 1 – 157 ln 22, March 14, 2006.

  h. Harry Samit's briefing or notes about his briefing to an FAA investigator in Minneapolis. In addition, please provide the August 31, 2001 Letterhead Memorandum "LHM" about a possible plot to hijack civilian aircraft;

  i. All briefings, reports or notes of meetings or interviews by Harry Samit of the FBI.

9. Copies of all Security Directives, Information Circulars and Civil Aviation

Security Intelligence published assessments prepared by the FAA, TSA or Homeland

Security and distributed to the Airlines, Airport Operators and/or Aviation Security

Screening companies including but, not limited to:

  a. All Aviation Information Circulars and Security Directives issued in 2001;

  b. September 1998 Assessment "UBL/WIF Threat to Civil Aviation;

  c. August 1999 Intelligence Note "UBL/WIF Hijacking Threat;

  d. February 2000 Assessment "Prospects for Another Sustained Hijacking to Free Incarcerated Terrorists;"

  e. Exhibit ST-3 – February 6, 2001, Senior Executive Intelligence Brief (SEIB) re threat of Sunni extremist terrorist attacks against U.S. facilities represented the most significant spike in threat reporting concerning this group since the time of the millennium;

  d. On May 23, 2001, a SEIB re release of prisoners including Sheikh Omar Abdel Rahman saying operatives might opt to hijack an aircraft or storm a U.S. embassy abroad;

  e. May 26, 2001, SEIB said threat reports surged in June and July of 2001 reaching an even higher peak of urgency; attack on the G-8 summit in Genoa;

  f. June 12, 2001 SEIB – CIB report re KSM recruiting people to travel to US to meet with colleagues there so they might conduct terrorist attacks on UBL's behalf;

  g. In late June of 2001, CIA terrorist threat advisory indicated a high probability of near-term 'spectacular' terrorist attacks resulting in numerous casualties;

  h. June 25, 2001, SEIB titled "Bin Laden and Associates Meeting Near-Term Threats" – reported multiple attacks being planned by UBL including 'severe blow' against U.S.;

  i. End of June 2001, AQ intelligence report warned that something 'very, very, very, very big was about to happen';

  j. June 30, 2001, SEIB titled 'Bin Laden Planning High-Profile attacks' reported UBL operatives expected near-term attacks to have dramatic consequences of catastrophic proportions;

  k. "The intelligence reporting at the end of June consistently described the upcoming attacks as occurring on a calamitous level, indicating that they

3

would cause the world to be in turmoil and that they would consist possibly of multiple – but not necessarily simultaneous – attacks.

10.    All documents concerning security level alerts and how airlines were informed of such alerts.

11.    All documents concerning aviation security including, but not limited to, the following:

    a.    All documents concerning CAPPS;
    b.    All documents concerning the Checkpoint Operations Guide "COG;"
    c.    All documents concerning approved security programs "ACSSP;"
    d.    All documents concerning the fact that the FAA set the minimum security standards and the airlines were free to increase security beyond the base-line standards set by the government;
    e.    Appropriate method to x-ray carry-on luggage and passengers;
    f.    All documents concerning pre-boarding screening procedures and guidelines applicable to the pre-boarding activities of the flights hijacked on September 11th;
    g.    All documents concerning interviews of airline, airport operators and security screening employees related to the September 11th attacks;
    h.    All audits, investigations, studies and reports concerning aviation security;
    i.    Cockpit door reinforcements or changing the locks on the cockpit doors;
    j.    Prevention of weapons or materials that could be used as weapons unto an aircraft;
    k.    Calibration of magnetometers;
    l.    Creation, Implementation and dissemination of Aviation Emergency Amendments, Security Directives and all other warnings given to the airlines, airport operators, and aviation security screeners;
    m.    Airline complaints concerning the costs of implementing security improvements and security directives.

12.    Copies of all documents collected by the 9/11 Commission and Joint Congressional Inquiry Into the September 11th Attacks which were produced to Moussaoui or his counsel. Such documents shall include but, shall not be limited to, those documents produced from citations in the 9/11 Commission Staff Monographs Number 3 and 4 and the Revised Aviation Monograph released on August 26, 2004.

4

13.    Copies of all interviews, testimony, notes, e-mails concerning the

following listed individuals. Such materials should include but, shall not be limited to

any testimony provided to the 9/11 Commission and the Joint Congressional Inquiry Into

the September 11th Attacks which were produced to defense counsel or Mr. Moussaoui.

The individuals include:

  a. Claudio Manno, Deputy Asst. Administrator for Security and
    Hazardous Materials at the FAA;

  b. Lynne Osmus, Assistant Administrator for Security and Hazardous
    Materials at the FAA;

  c. Larry Wansley, former Director of Corp. Security for American
    Airlines;

  d. Ed Soliday, former Vice President of Corporate Safety, Security
    and Quality Assurance for United Airlines;

  e. Cathal Flynn, Associate Administrator for Civil Aviation Security
    for the FAA from 1993-2000;

  f. Patrick McDonnell, Director of Intelligence for the FAA until
    August 2001;

  g. Matthew Kormann, Liaison Officer, Transportation Security
    Intelligence Service;

  h. Robert White, Manager of the Liaison Division at the Office of
    Intelligence at the TSA;

  i. John Howley, Intelligence Analyst at the TSA;

  j. Harry Samit, FBI;

  k. Carla Martin, TSA Lawyer;

  l. Any current or former employee of the airlines, airport operators or
    aviation security screening companies.

14.    Copies of all videos and photographs produced to defendant and his

counsel. These documents shall include and shall not be limited to the following:

  a. Complete copy of the Dulles security screening video on the
    morning of September 11th and all slides or stills from the video;

  b. Copies of all security screening videos from any airport or
    photographs from any airport;

  c. Complete copy of the Flight 93 cockpit voice recorder audiotape.

15.    All documents concerning warnings or threat assessments to hijack or

attack civil aviation. *See,* Order of Judge Brinkema dated January 24, 2006; Docket

Number 1477. Such records shall include:

        a.    All documents concerning Niaz Khan or the April 2000 walk-in to
            the FBI Newark office as described in the Joint Congressional
            Inquiry Into the September 11th attacks on p. 211;[5]
        b.    All materials related to the Air France Hijacking in 1993;
        c.    All materials related to the Bojinka plan by Ramzi Yousef to
            simultaneously explode 12 American flagship carriers over the
            Pacific Ocean and the back-up plot to intentionally crash a plane
            into the CIA headquarters;
        d.    All documents concerning the Indian Airlines Flight 814 hijacking
            in December 1999;
        e.    All Nippon Airways (ANA) hijacking on January 20, 1997;
        f.    Federal Express hijacking on April 7, 1994;
        g.    November, 1998, Kurdish plot to attack Ataturk Tomb.

16.    All documents concerning the travel and activities of the September 11th

hijackers, Ramzi Binalshibh, Khalid Sheik Mohammed, Zacarias Moussaoui and

Zakariya Essabar from 1990 through September 11th 2001. Such documents shall include

the following:

        a.    All e-mails sent and/or received by any of the September 11th
            hijackers;
        b.    All banking documents, wire transfer records, Western Union
            records, UPS records and/or any other documents describing how
            the hijackers received or transferred funds;
        c.    All interactions between the hijackers and Imams at various
            mosques and/or with employees of the Saudi Embassy and or any
            charitable organizations or NGOs;
        d.    All telephone and cell phone records including any assessments as
            to the identity of any of the numbers called or the numbers from
            which calls were placed;
         e.    All travel receipts and timelines depicting the locations of the
            persons identified above at various times from 1990 trough
            September 2001;
        f.    A description, photographs and receipts of all weapons purchased
            by the 9/11 hijackers to conduct their operations. Such items shall

---

[5]    *See also,* Motion filed by Zacarias Moussaoui "9/11 WTC Strike!!!" filed on August 20, 2003;
Docket No. 1027

include all knives, utility tools, pepper spray, mace, razor blades,
wires, guns or any other potential weapons that may have been
used to hijack the airplanes on the morning of September 11th.

g.    Any and all reports cables, slides, talking points, memoranda or
other documents discussing the September 11th hijackers and
persons listed above;

h.    All employment documents whether accurate or not;

i.    All hard drives from computers;

j.    Post Office Box information.

17.    Electronic and searchable copies of all FBI 302's produced to the

defendant. Mr. Spencer last stated that 160,000 302's had been produced to defendant

and his counsel.[6] Such materials shall include information on Jamal Al Fadl and Abdul

Hakim Murad.

18.    Any and all documents concerning how the terrorist hijackings were

conducted on the morning of September 11th. These documents shall include but shall

not be limited to:

a.    The method of seizing control of the aircraft;

b.    All information concerning knowledge by the passengers on board
that the planes may be crashed into buildings;

c.    All reports describing the flight patterns or paths of the hijacked
aircraft including altitudes, speeds and maneuvers;

d.    The means by which the hijackers passed through security
screening at the various airports;

e.    All documents provided by the airlines, security screening
companies and airport operators to the government which were
produced to Moussaoui and/or his counsel.

19.    Notes of all meetings or interviews conducted with any current or former

employee of any of the airlines, security screening companies and airport operators or

their lawyers concerning the September 11th attacks, security screening procedures, threat

assessments, security directives, information circulars or any other subjects related to the

Moussaoui case.

---

[6]    *See* Transcript of Hearing on April 7, 2006, p. *See also,* Docket Entry 339.

7

20. All documents concerning the following listed individuals that were produces to Mr. Moussaoui or his counsel. Such items shall include all reports, notes, confessions, interrogations, interviews, subpoenas, warrants and supporting affidavits concerning the following individuals:

      a.    Jamal Al Fadl
      b.    Ramzi Binalshibh
      c.    Khalid Sheik Mohammed
      d.    Ramzi Yousef
      e.    Abdul Hakim Murad
      f.    Khallad
      g.    Riduan Isamuddin (a/k/a Hambali)
      h.    Mustafa Ahmed al-Hawsawi
      i.    Ahad Sabet
      j.    Yazid Sufaat
      k.    Abu Zabaydah
      l.    Mohamed bin Moisalih
      m.    Mohammed Manea Ahmad al-Qahtani
      n.    Faiz Abu Baker Bafana
      o.    Sheik Salman al-Ouda
      p.    Sheik Safar al-Hawali
      q.    Saleh al-Hussayen
      r.    Sulaiman Abu Ghaith
      s.    Essam Aranout
      t.    Adel Baterjee
      u.    Mohammed Hayder Zammar
      v.    Richard Reid
      w.    Any person held as a material witness in connection with the September 11th attacks.

21. Documents concerning information about all persons the government contends are members of the September 11th conspiracy alleged in the indictment of Zacarias Moussaoui. Such materials shall include information which reflects all meetings, communications, or activities participated in by these alleged co-conspirators including electronic intercepts of conversations among alleged co-conspirators.

22.    Any and all materials produced under agreement with any foreign government, including but not limited to, a French dossier on Moussaoui's upbringing in Southern France and later contacts with Islamic radicals.

Exhibit B

# CONDON & FORSYTH LLP

NEW YORK
LOS ANGELES
WASHINGTON, DC

Direct Dial: (212) 894-6770
Direct Fax: (212) 894-6771
dbarry@condonlaw.com

April 12, 2006

**VIA EMAIL**

Beth Goldman, Esq.
Sarah Normand, Esq.
Assistant United States Attorneys
United States Attorneys Office, S.D.N.Y.
86 Chambers Street – 3rd Floor
New York, New York 10007

Re:    In re September 11 Litigation, 21 MC 97 (AKH)
         In re September 11 Property Damage and
         Business Loss Litigation, 21 MC 101 (AKH)
         C & F Ref: DTB/CRC/MZ/28079

Dear Beth and Sarah:

I write in my capacity as Aviation Defendants' Liaison Counsel in the September 11 Litigation pending before Judge Alvin K. Hellerstein in the United States District Court for the Southern District of New York (21 MC 97; 21 MC 101).

I am in receipt of a copy of the Order issued on April 7, 2006 by United States District Judge Leonie M. Brinkema in *United States of America v. Zacarias Moussaoui* pending in the Eastern District of Virginia (No. 1:01 cr 455). That Order granted a motion to intervene filed by plaintiffs in the September 11 Litigation pending before Judge Hellerstein and granted in part the movants-intervenors' motion for access to certain portions of the *Moussaoui* record (Docket #1728). The referenced Order requires the government to provide the movants-intervenors with all evidence presented to the Moussaoui jury as well as all non-classified and non-SSI evidence produced by the government to Moussaoui's defense counsel during discovery but not admitted into evidence. The Order further requires that the movants-intervenors provide the government with specific categories of the evidence they seek by April 14, 2006.

On behalf of the Aviation Defendants in the September 11 Litigation, please consider this letter as a formal request that the government provide the Aviation Defendants with the same "access" to the evidence granted to the movants-intervenors by Judge Brinkema in her April 7, 2006 Order. If the government produces copies of documents directly to counsel for the movants-intervenors then I request that copies of those same documents also be provided to the Aviation Defendants.

CONDON & FORSYTH LLP

Beth Goldman, Esq.
Sarah Normand, Esq.
April 12, 2006
Page 2

I await confirmation from you that the government will comply with this request.

Thank you for your anticipated cooperation.

Sincerely yours,

Desmond T. Barry, Jr.
Aviation Defendants' Liaison Counsel

DTB/jam

cc:     Marc S. Moller, Esq.
        Robert S. Clifford, Esq.
        Richard Williamson, Esq.
        M. Bradford Stein, Esq.
        Beth Jacob, Esq.
        Aviation Defendants' Counsel

Exhibit C

FLEMMING ZULACK WILLIAMSON ZAUDERER LLP

LAW OFFICES
ONE LIBERTY PLAZA
NEW YORK, NEW YORK
10006-1404
(212) 412-9500
FAX (212) 964-9200

April 13, 2006

**By E-mail and Regular Mail**

RICHARD A. WILLIAMSON

Beth E. Goldman, Esq.
Sarah Normand, Esq.
Assistant United States Attorneys
United States Attorneys Office
Southern District of New York
86 Chambers Street – 3rd Floor
New York, N.Y. 10007

Re: **In Re: September 11 Litigation, 21 MC 97 (AKH)**
**In Re: September 11 Property Damage and**
**Business Loss Litigation, 21 MC 101 (AKH)**

Dear Beth and Sarah:

On behalf of the Ground Defendants in the September 11, 2001 wrongful death, personal injury, property damage and business loss litigations pending before Judge Alvin K. Hellerstein in the United States District Court for the Southern District of New York (21 MC 97; 21 MC 101), we join in the request made on behalf of the Aviation Defendants by Desmond T. Barry, Jr., Esq., in his April 12, 2006 letter to you (copy attached). We request that the government provide the Ground Defendants with the same materials that will be provided to plaintiffs in these litigations pursuant to Judge Brinkema's April 7, 2006 Order. Please confirm that you will provide us with the requested materials.

Very truly yours,

*Richard A. Williamson* (mos)

Richard A. Williamson
Ground Defendants' Liaison Counsel

WRITER'S DIRECT DIAL
(212) 412-9530
rwilliamson@fzw.com

cc:    Desmond T. Barry, Jr., Esq.
       Marc S. Moller, Esq.
       Robert S. Clifford, Esq.
       Beth Jacob, Esq.
       Ground Defendants' Counsel

Encl.

21600/281407

Exhibit D

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------x
                                            :
                                            :        **ORDER DENYING**
                                            :        **DISCOVERY REQUESTS**
IN RE SEPTEMBER 11 LITIGATION               :
                                            :        21 MC 97 (AKH)
                                            :        21 MC 101 (AKH)
-----------------------------------------------------x

ALVIN K. HELLERSTEIN, U.S.D.J.:

       Plaintiffs in the above captioned actions request additional discovery

relating to alleged improprieties on the part of the Transportation Security Administration

("TSA") and certain of the defense lawyers in the instant litigation. Specifically,

Plaintiffs assert that documents recently made available in the matter of U.S. v.

Moussaoui, currently pending before Judge Leonie Brinkema in the Eastern District of

Virginia, indicate an improper relationship between the TSA and defense counsel.

Plaintiffs request a conference to address these concerns and further request permission to

take depositions of various government officials. For the reasons stated below, Plaintiffs'

request is denied.

       By their letters, Plaintiffs assert that the communications between the TSA

and certain of the defense lawyers in the instant litigation indicate that the TSA may not

have acted with impartiality in reaching its determinations as to matters affecting both the

In re September 11 Litigation and the Moussaoui death penalty trial currently pending

before Judge Brinkema. To the extent any alleged improprieties by the TSA and defense

counsel concern the case currently before Judge Brinkema, such concerns are beyond the

scope of my jurisdiction. To the extent any alleged improprieties raise questions as to the

validity of the Final Order issued by the TSA on February 7, 2006 in In re September 11

Litigation, such concerns should properly be brought to the Second Circuit Court of

Appeals which holds exclusive jurisdiction over appeals from final orders by the TSA. See 49 U.S.C. § 46110.

In accordance with the foregoing, the request by Plaintiffs is denied, as not properly within the scope of cases and controversies over which I preside. Accordingly, and by separate enclosures, I am returning to their sender all letters submitted by counsel on this subject. Any requests by the media or members of the public for access to the letters referenced in this Order should be directed to Judge Brinkema.

SO ORDERED.

Dated:     New York, New York
           March 17, 2006

ALVIN K. HELLERSTEIN
United States District Judge

2

CERTIFICATE OF SERVICE

I certify that, I served a true and correct copy of the foregoing on counsel for the parties by depositing a true and correct copy in the United States Mail, first class postage fully prepaid, addressed as follows:

Attorneys for Defendant Moussaoui:

Gerald T Zerking, Esq.
Kenneth P. Troccoli, Esq.
Office of the Federal public Defender
1650 King Street, Suite 500
Alexandria VA 22314

Edward B. Mc Mahon, Jr. Esq.
107 East Washington Street
Middleburg VA 20117

Alan H. Yamamoto, Esq.
643 South Washington Street
Alexandria VA 22314

Attorneys for Victim-Intervenors:

Kathleen J. K. Holmes, Esq.
Williams Mullen
8270 Greensboro Suite 700
McLean VA 22102

Ronald Motley, Esq.
Jodi Westbrook, Esq.
Motley Rice LLC
28 Bridgeside Blvd
Mount Pleasant SC 29464

Liaison Counsel for Personal Injury Plaintiffs' Executive
Committee
in SDNY Case No. 21 MC 97

Marc S. Moller, Esq.
Brian Alexander, Esq.
Kreindler & Kreindler
100 Park Ave
New York, N.Y. 10017

31

Liaison Counsel for Property Damage Plaintiffs' Executive
Committee
in SDNY Case No. 21 MC 101

Robert Clifford, Esq.
Clifford Law Offices
120 North LaSalle Street, 31st Floor
Chicago IL 60602

Richard A. Williamson, Esq.
Fleming Zulack Williamson Zauderer LLP
1 Liberty Plaza
New York N.Y. 10006

Counsel for Certain Cross-Claim Plaintiffs

Aviation Defendants' Liaison Counsel in SDNY Case No. 21 MC 97 and
21 MC 101

Desmond T. Barry, Esq.
7 Times Square
New York, N.Y. 10036

Dated: April 21, 2006

_____
R. JOSEPH SHER

32