**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

```
_____
                               )
MARIA KOUTNY, et al.,          )
                               )
        Plaintiffs,            )
                               )
        v.                     )     Civil Action No. 06-598 (RWR)
                               )
CARLA J. MARTIN,               )
                               )
        Defendant.             )
_____)
```

<u>MEMORANDUM OPINION</u>

Seven plaintiffs sued defendant Carla Martin under <u>Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971), alleging that Martin deprived them of their constitutional rights to access to the courts and to a fair trial. After the seven cases were consolidated, Martin moved to dismiss the complaint claiming that plaintiffs lack standing and fail to state a claim upon which relief may be granted. While plaintiffs possess standing to pursue their claims, they have not stated a claim for relief, and Martin's motion to dismiss will be granted.

<u>BACKGROUND</u>

Plaintiffs claim that Martin, a former employee of the Department of Transportation and the Department of Homeland Security, conspired to destroy, cover up, and tamper with evidence in two separate proceedings. A current consolidated proceeding involving plaintiffs is a wrongful death action,

- 2 -

related to the September 11, 2001 attacks, against various
airline company defendants pending in federal district court for
the Southern District of New York before Judge Alvin Hellerstein.
During that proceeding, the Transportation Security
Administration ("TSA") intervened to protect unauthorized
disclosure of Sensitive Security Information ("SSI").  After
allowing plaintiffs' attorneys possessing the necessary security
clearance to be granted conditional access to SSI, TSA reneged on
this position.  In response to Judge Hellerstein's request, TSA
issued final orders denying conditional disclosure of SSI and
requiring that all discovery requests potentially implicating SSI
be filtered through the TSA.  Judge Hellerstein determined that
he was without jurisdiction to review TSA's final orders.
(Def.'s Mot. to Dismiss, Ex. 3 (part 1), Order at 15-16.)
Plaintiffs allege that Martin, as part of the TSA, interfered
with the wrongful death action by improperly labeling
discoverable documents and evidence as SSI and "otherwise causing
the unavailability of information which was previously public,"
preventing plaintiffs from engaging in discovery.  (Compl.
¶ 30(f), (i).)

    Plaintiffs also assert that Martin coached "witnesses, and
otherwise attempted to shade and alter evidence" in the criminal
case of United States v. Moussaoui filed in the federal district
court for the Eastern District of Virginia before Judge Leonie

- 3 -

Brinkema.  (Compl. ¶ 30(l).)  Judge Hellerstein ruled that he
could not address that TSA conduct (Compl., Ex. B), but Judge
Brinkema determined that Martin's involvement with witnesses
violated judicial orders and that her actions were "not capable
of being authorized by her position in government."  (Compl. ¶
32.)  The judge thereafter excluded certain witnesses from
testifying in that criminal trial.  (Pls.' Opp'n to Def.'s Mot.
to Dismiss ("Pls.' Opp'n") at 3.)  Plaintiffs, as intervenors in
the Moussaoui action (see Def.'s Mot. to Dismiss, Ex. 4, Mot. to
Intervene), sought to gain access to portions of the record,
namely evidence relating to aviation security (see Pls.' Opp'n,
Ex. A), to use in their wrongful death action.  Their request was
denied as moot as to all publicly available evidence and granted
as to all evidence to be placed before the jury, and all non-
classified and non-SSI information produced by the government to
the defense as discovery material.  (Def.'s Mot. to Dismiss, Ex.
4, Order of 4/7/06.)  On the government's appeal, the United
States Court of Appeals for the Fourth Circuit reversed, holding
that Judge Brinkema lacked authority to require the government
"to provide non-public criminal discovery materials to victims
for their use in civil litigation against third parties in a
different jurisdiction." United States v. Moussaoui, 483 F.3d
220, 233, 239 (4th Cir. 2007).  Thus, the government has not

- 4 -

turned over the requested discovery from <u>Moussaoui</u> for use in the wrongful death litigation.

Plaintiffs filed the instant <u>Bivens</u> action seeking damages and injunctive relief, claiming that they possess no other adequate remedy for Martin's actions.  (Compl. ¶ 35.)  Martin moved to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), contending that plaintiffs lack standing and they have failed to state a predicate constitutional violation as is required by <u>Bivens</u>.  Plaintiffs[1] have opposed the motion.

DISCUSSION

I.  STANDING

"[A] showing of standing is an essential and unchanging predicate to any exercise of [a court's] jurisdiction."  <u>Fla. Audubon Soc'y v. Bentsen</u>, 94 F.3d 658, 663 (D.C. Cir. 1996) (citation and internal quotation omitted).  "As the party invoking federal jurisdiction, the plaintiff bears the burden of establishing standing."  <u>Autozone Dev. Corp. v. Dist. of Columbia</u>, 484 F. Supp. 2d 24, 28 (D.D.C. 2007).  A defendant may move under Rule 12(b)(1) to dismiss a claim on the ground that the court lacks jurisdiction over that claim.  In considering the motion, a court accepts as true all of the factual allegations

---

[1]     The district court electronic docket for the Southern District of New York reflects that three of the seven plaintiffs here (Maria Koutny, Stephen Holland, and Eileen Bertorelli-Zangrillo) settled their wrongful death actions after opposing Martin's motion, but that the four remaining plaintiffs still have ongoing litigation there.

- 5 -

contained in the complaint, Artis v. Greenspan, 158 F.3d 1301,
1306 (D.C. Cir. 1998), and may also consider "undisputed facts
evidenced in the record." Coal. for Underground Expansion v.
Mineta, 333 F.3d 193, 198 (D.C. Cir. 2003)(citations and internal
quotation omitted). "The nonmoving party is entitled to all
reasonable inferences that can be drawn in her favor." Artis,
158 F.3d at 1306.

In order to establish standing, the plaintiffs must allege a
personal injury in fact, that is traceable to the defendant's
conduct, and is redressable by the relief requested. See Int'l
Bhd. of Teamsters v. Transp. Sec. Admin., 429 F.3d 1130, 1133
(D.C. Cir. 2005). "Specifically, standing to bring a
constitutional claim requires (1) 'injury in fact' which is (a)
'concrete and particularized' and (b) 'actual and imminent, not
'conjectural' or 'hypothetical[,]' . . . (2) a 'causal connection
between the injury and the conduct complained of[,]'" Wright v.
Foreign Serv. Grievance Bd., 503 F. Supp. 2d 163, 171 (D.D.C.
2007) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560
(1992)), and (3) that it is "'likely,' as opposed to merely
'speculative,' that the injury will be 'redressed by a favorable
decision.'" Lujan, 504 U.S. at 561 (citation omitted). "At the
pleading stage, general factual allegations of injury resulting
from the defendant's conduct may suffice[.]" Id. at 561.

- 6 -

Martin argues that the plaintiffs lack standing because they have not alleged a personal injury and that the court in the wrongful death action has already granted plaintiffs access to their requested discovery.  The plaintiffs counter that Martin's interference and tampering with evidence in both the wrongful death and Moussaoui actions constitutes a redressable injury given that "[p]laintiffs are still without the critical evidence they require to vindicate their constitutionally protected right to access the United States justice system."  (Pls.' Opp'n at 8.)

At the Rule 12(b)(1) stage, plaintiffs' allegation that Martin's actions deprived them of testimony to which they would have had access sufficiently plead an injury that is traceable to Martin's conduct.  They allege that Martin interfered with the civil litigation, improperly classified information as SSI, and tampered with witnesses in the Moussaoui trial requiring Judge Brinkema to exclude testimony on aviation security.  Martin's asserted actions would have curtailed discoverable information that the plaintiffs would have been able to use in their wrongful death litigation.  Furthermore, the issue is not, as Martin asserts, that plaintiffs have alternative avenues of relief available, but that the injury alleged by the plaintiffs is redressable by the relief requested.  In plaintiffs' case, the injury would likely be redressed by the requested relief and is not speculative.  The relief would provide damages to compensate

- 7 -

for alleged actions by Martin which would have weakened the
plaintiffs' proof of liability and damages in the wrongful death
litigation, and would enjoin Martin from further interfering in
that action.  Plaintiffs have presented an actual, concrete
injury that was allegedly caused by Martin and is redressable.
Accordingly, plaintiffs have standing to bring their <u>Bivens</u>
claim.

II.  CONSTITUTIONAL CLAIM

    Martin also moved to dismiss under Rule 12(b)(6), claiming
that plaintiffs have not adequately pled a constitutional
violation for <u>Bivens</u> purposes and that she enjoys qualified
immunity from suit.  (Def.'s Mot. to Dismiss at 13-15.)  In order
to survive a motion to dismiss under Rule 12(b)(6), the
allegations stated in the plaintiffs' complaint "must be enough
to raise a right to relief above the speculative level[.]"  <u>Bell
Atl. Corp. v. Twombly</u>, 127 S. Ct. 1955, 1965 (2007).  The
complaint must be construed in the light most favorable to the
plaintiffs and "the court must assume the truth of all well-
pleaded allegations."  <u>Warren v. Dist. of Columbia</u>, 353 F.3d 36,
39 (D.C. Cir. 2004).  If a plaintiff fails to allege sufficient
facts to support a claim, the complaint must be dismissed.  <u>See
Twombly</u>, 127 S. Ct. at 1965.

    In determining whether a complaint fails to state a claim, a
court must consider only facts alleged in the complaint,

- 8 -

documents either attached to or incorporated in the complaint, or
matters of which the court may take judicial notice.  "'[T]he
court may take judicial notice of matters of a general public
nature, such as court records, without converting the motion to
dismiss into one for summary judgment.'"  Baker v. Henderson, 150
F. Supp. 2d 17, 19 n.1 (D.D.C. 2001) (citing Marshall County
Health Care Auth. v. Shalala, 988 F.2d 1221, 1226 (D.C. Cir.
1993)).

    Qualified immunity protects government officials from
"liability for civil damages insofar as their conduct does not
violate clearly established statutory or constitutional rights of
which a reasonable person would have known."  Harlow v.
Fitzgerald, 457 U.S. 800, 818 (1982).  The qualified immunity
defense was recognized to help protect government officials from
the burden of having to defend lawsuits based upon insubstantial
claims.  Id. at 817-18.  In Bivens, the Supreme Court provided
that a "federal agent acting under color of his authority gives
rise to a cause of action for damages consequent upon his
unconstitutional conduct."  403 U.S. at 389.  "For a public
official to be liable for damages, that official must have
violated a constitutional right, and that right must have been
'clearly established' -- 'the contours of the right must be
sufficiently clear that a reasonable official would understand
what he is doing violates that right.'"  Int'l Action Ctr. v.

- 9 -

<u>United States</u>, 365 F.3d 20, 24 (D.C. Cir. 2004) (quoting <u>Anderson v. Creighton</u>, 483 U.S. 635, 640 (1987)).

When assessing a public official's assertion of qualified immunity, a court must first ask whether "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the [official]'s conduct violated a constitutional right[.]"  <u>Brosseau v. Haugen</u>, 543 U.S. 194, 197 (2004) (internal citation omitted).  The D.C. Circuit has "supplanted the liberal pleading requirements of the Federal Rules with a heightened pleading standard whenever a plaintiff in a <u>Bivens</u> claim alleges an unconstitutional motive" because "substantial costs attend the litigation of the subjective good faith of government officials[.]"  <u>Whitacre v. Davey</u>, 890 F.2d 1168, 1171 (D.C. Cir. 1989) (citation and internal quotation omitted).  Thus, the relevant constitutional right must be defined with some specificity -- "[i]t does no good to allege that police officers violated the right to free speech, and then conclude that the right to free speech has been 'clearly established' in this country since 1791.  Instead, courts must define the right to a degree that would allow officials reasonably [to] anticipate when their conduct may give rise to liability to damages[.]"  <u>Int'l Action Ctr.</u>, 365 F.3d at 25 (citations and internal quotations omitted).  In response to Martin's assertion that the plaintiffs have not pled an established constitutional violation with the

- 10 -

required specificity, plaintiffs maintain that they have
established that Martin violated their right of access to the
courts.  However, "[i]f . . . the plaintiffs have failed to state
a denial of access claim, the complaint must be dismissed
regardless of whether [the defendant has] qualified immunity[,]"
and the more "complicated" analysis involving "the sometimes
nuanced issues involved with qualified immunity" becomes
"unnecessary." Broudy v. Mather, 460 F.3d 106, 116 (D.C. Cir.
2006).

        The right of access to the courts has constitutional
origins.  Id. at 117 (stating that the Supreme Court has
"grounded the right at various times in different provisions of
the Constitution" including the First, Fifth, and Fourteenth
Amendments).  The right guarantees that access will be "adequate,
effective and meaningful." Bounds v. Smith, 430 U.S. 817, 822
(1977).  The Supreme Court has recognized two types of denial of
access suits.  One is a "forward-looking" suit in which official
action frustrates a plaintiff's ability to prepare and file a
suit that has yet to be litigated.  The other is a "backward-
looking" suit in which official action has allegedly caused "the
loss or settlement of a meritorious case . . . , or the loss of
an opportunity to seek some particular order of relief[.]"
Christopher v. Harbury, 536 U.S. 403, 413-14 (2002); Broudy, 460
F.3d at 120-21.  In the case of the backward-looking suit, such

- 11 -

as the instant action, the "constitutional right of access to
courts may be violated where the government covers up evidence
and thereby renders a plaintiff's judicial remedy ineffective."
Mazloum v. Dist. of Columbia, 442 F. Supp. 2d 1, 7 (D.D.C. 2006)
(citing Harbury, 536 U.S. at 413-15).  "The ultimate object of
these sorts of access claims, then, is not the judgment in a
further lawsuit, but simply the judgment in the access claim
itself, in providing relief unobtainable in no other suit in the
future."  Harbury, 536 U.S. at 414.  To establish a backward-
looking denial of access claim, plaintiffs must "identify in the
complaint a non-frivolous, arguable underlying claim," show they
have been denied a remedy for the underlying claim, and
demonstrate that the defendant's actions have cut off the remedy.
Broudy, 460 F.3d at 120.

    A.   Underlying cause of action

    "[T]he underlying cause of action . . . is an element that
must be described in the complaint, just as much as allegations
must describe the official acts frustrating the litigation."
Harbury, 536 U.S. at 415 (further noting that access claims are
"ancillary to the underlying claim, without which a plaintiff
cannot have suffered injury by being shut out of court").
Plaintiffs have adequately alleged the underlying wrongful death
cause of action in pleading their denial of access claim.  They
complain that "[o]n September 11, 2001, plaintiff[s] . . . lost a

- 12 -

family member on an aircraft operated by United Airlines (UA) as
Flight 175.  Thereafter, and at all times relevant herein,
plaintiff[s] brought [a] . . . suit against UA and others to
redress the loss of life and other damages . . . .  After
commencing the underlying wrongful death cause of action,
plaintiff[s], through . . . counsel, both through independent
investigation and through formal discovery, sought evidence
relevant to the case and sought to lawfully prosecute [their]
case and claims . . . .  Defendant engaged in the following
activities, which actions . . . violated [plaintiffs']
constitutional rights by frustrating the underlying wrongful
death litigation and harming or depriving plaintiff[s] of [their]
right to a full and/or fair trial[.]"  (Compl. ¶¶ 22, 27, 30.)
Cf. Harbury, 536 U.S. at 418 (noting that plaintiff failed to
identify a predicate claim for denial of access in her complaint
and only provided an underlying claim during appellate argument);
Mazloum v. Dist. of Columbia, 442 F. Supp. 2d 1, 7 (D.D.C. 2006)
(stating that plaintiff's complaint failed to meet Harbury's
threshold requirement because it did not provide an underlying
cause of action that had been rendered ineffective).  Plaintiffs
affirmatively state that Martin interfered with their pending
wrongful death claim by, among other things, blocking access to
evidence by improperly labeling evidence as SSI.  Thus, they have
met the first prong of establishing a right to access claim.

- 13 -

B.   <u>Denial of a remedy and causation</u>

To meet the remaining prongs of the test for a backward-looking claim, plaintiffs must demonstrate that Martin's conduct "completely foreclosed" the remedy that they seek in the wrongful death litigation, <u>Broudy</u>, 460 F.3d at 120 (citations omitted), by identifying a "remedy available under the access claim and [which is] presently unique to it." <u>Harbury</u>, 536 U.S at 417-18.  "Thus, if relief on the underlying claims is still available in a suit that may be yet be brought, . . . or [in] a presently existing claim, . . . the plaintiffs cannot meet this element of their claims." <u>Broudy</u>, 460 F.3d at 120 (citations and internal quotations omitted) (noting that in <u>Harbury</u>, the plaintiff's claim failed because she could still obtain damages through her tort claim and "[d]amages, therefore, were not a 'remedy . . . presently unique' to her access claim" (quoting <u>Harbury</u>, 536 U.S at 417-18)).

It is not clear that Martin caused the remedies that plaintiffs seek in this action -- damages caused by weakened proof in the wrongful death action and injunctive relief barring Martin from further interference in that litigation -- to be not addressable through their existing wrongful death case.[2]

_____

[2]      Although the plaintiffs' two actions are against different defendants and involve different claims -- the airline defendants in the wrongful death action and Martin in this <u>Bivens</u> action -- "differences in legal theories for the same remedy cannot save a deprivation of access claim in light of <u>Harbury</u>'s requirement that the remedy on an access claim be not otherwise

- 14 -

Plaintiffs seek to prove liability and damages in the wrongful
death action using evidence made unavailable when TSA classified
it as SSI.  A remedy to challenge a final TSA classification
order is provided by statute.  An interested party may petition
to modify or set aside such an order in an appropriate court of
appeals.  49 U.S.C. § 46110(a); see also Gilmore v. Gonzales, 435
F.3d 1125, 1133 n.9 (9th Cir. 2006) (stating that claims that are
"'inescapably intertwined with a review of procedures and merits
surrounding [a TSA final] order'" must be brought before the
courts of appeals (quoting Mace v. Skinner, 34 F.3d 854, 858 (9th
Cir. 1994))).  Nothing stopped plaintiffs from challenging the
TSA order in the courts of appeals.[3]  Plaintiffs certainly have

_____

available."  Mazloum, 442 F. Supp. 2d at 8 (citations and
internal quotations omitted) (further providing that "allowing a
plaintiff to pursue a deprivation of access claim seeking the
same damages remedy as is available through other claims, based
simply on the use of different legal theory, would vitiate the
'lost remedy' requirement").  Nor does the difference in parties
necessarily undermine the requirement that the relief sought in
the access claim be "unique."  Although the Harbury plaintiff
pled different claims against different government defendants,
the Supreme Court nevertheless held that the relief requested in
a denial of access claim against one set of defendants could be
obtained on an existing claim against another set of defendants.
Harbury, 536 U.S. at 421.

[3]      The court of appeals electronic docket for the D.C.
Circuit reflects that plaintiffs' petitions for review were
dismissed, in part without opposition.  See American Airlines,
Inc. et al. v. Transp. Sec. Admin., No. 06-1093 (D.C. Cir.,
Orders dated July 25, 2006 and March 16, 2007).  The parties
never updated the record in this case regarding these and other
developments (see supra note 1), or the status of any review
petitions filed in the Second Circuit.  (See Pls.' Opp'n, Ex. 2,
Gov't Mem. in Supp. at 27 [docket #19-03].)  Such updates would
have been helpful.

- 15 -

not shown that Martin cut off that remedy to obtaining the
evidence they seek to aid the full proof of liability and damages
in the wrongful death action.

    Plaintiffs also complain of testimony made unavailable in
the criminal trial because of actions Martin took that Judge
Brinkema found improper.  Although Judge Brinkema barred affected
witnesses from testifying in the criminal trial, plaintiffs have
shown no such barring order in effect in the wrongful death
action, or that Judge Hellerstein would somehow be bound by Judge
Brinkema's action to enter such an order, or that such an order
would be an inevitability in that civil action where money and
not human liberty is at stake.  Finally, while Judge Hellerstein
has denied plaintiffs the opportunity to hold a conference
regarding "an improper relationship between TSA and defense
counsel" (Compl., Ex. B), he has not precluded plaintiffs from
seeking injunctive relief against Martin.

    Plaintiffs have not demonstrated that the access claim will
address their injuries in a manner that the wrongful death action
cannot.  See Harbury, 536 U.S. at 421.  The relief requested by
the plaintiffs for Martin's alleged actions may be available
through existing avenues.  "There is . . . no point in spending
time and money to establish the facts constituting a denial of
access when a plaintiff would end up just as well off after
litigating a simpler case without the denial-of-access

- 16 -

element[,]" <u>Harbury</u>, 526 U.S. at 415, and the relief sought in the underlying wrongful death action has not been completely foreclosed. <u>See</u> <u>Broudy</u>, 460 F.3d at 122 (noting the availability of alternative administrative solutions to achieve the requested remedies and that by failing to exhaust their administrative remedies, plaintiffs could not show that their underlying claims had been completely foreclosed). Because Martin has not completely foreclosed remedies in the wrongful death action and the remedy sought in this <u>Bivens</u> action is not uniquely available, the plaintiffs have failed to state a right to access claim. Consequently, they have not alleged a constitutional injury for <u>Bivens</u> purposes, and Martin's motion to dismiss will be granted.

<u>CONCLUSION</u>

While the plaintiffs have standing to bring this action, they have failed to state a constitutional injury necessitating relief. They have not shown that Martin foreclosed their opportunity to pursue their wrongful death litigation and have failed to state a claim for the predicate constitutional injury of denial of access to courts. Plaintiffs' complaint will be dismissed. An appropriate Order accompanies this Memorandum Opinion.

- 17 -

SIGNED this 31st day of December, 2007.


_____/s/_____
RICHARD W. ROBERTS
United States District Judge